### WOLFF v. MEGARGEL et al.

(Supreme Court, Appellate Term. May 24, 1910.)

1. SALES (§ 36*)—CONTRACTS—RIGHT TO RESCIND—KNOWLEDGE OF MISTAKE OF PARTY.

Defendants, who contract to sell a number of the "1932" bonds of a certain company, intending to sell bonds of the issue of 1953, and knowing nothing of the issue of 1932, which were worth much more, may be relieved of their contract, plaintiff having intended to buy the issue of 1932, so that there was no mutual mistake authorizing reformation, only if plaintiff knew that defendants were in fact intending to sell the issue of 1953, and not that of 1932, and so, by accepting defendants' mistaken offer, was guilty of such unconscionable conduct as will permit them to repudiate their contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 63, 64; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SALES (§ 53*)—CONTRACTS—RIGHT TO RESCIND—KNOWLEDGE OF MISTAKE OF PARTY—EVIDENCE.

Evidence in an action on defendants' contract to sell bonds of a certain company of the issue of 1932 *held* sufficient to go to the jury on the issue of plaintiff having known that defendants were in fact intending to sell the issue of 1953, and not that of 1932, and so by accepting their mistaken offer was guilty of such unconscionable conduct as will permit them to repudiate their contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 53.*]

Seabury, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Mortiz Wolff against Roy C. Megargel and another, trading under the firm name of Megargel & Brooks. From a judgment on a verdict directed for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial ordered.

Argued before SEABURY, LEHMAN, and PAGE, JJ.

Krauthoff, Harmon & Mathewson (Edward J. Patterson, of counsel), for appellants.

Griggs, Baldwin & Pierce (Martin Conboy, of counsel), for respondent.

LEHMAN, J. The defendants agreed to sell and deliver to the plaintiff nine $1,000 Pennsylvania Coal & Coke 5 per cent. bonds due in 1932. It appears that there were two issues of the 5 per cent. bonds of the Pennsylvania Coal & Coke Company, respectively due in 1932 and in 1953; that the bonds of 1953 had a more general market, but were selling at about 20 per cent. less than the issue of 1932. It further appears that the defendants were dealers in bonds in the city of Scranton, Pa., and the plaintiff was a dealer in bonds in the city of New York. It is fairly inferable from the evidence that no bonds of the issue of 1932 were bought or sold outside of New York or Philadelphia; that the defendants knew of no issue except that of 1953, and that, although they specifically agreed to sell bonds of the issue of 1932, they intended to sell bonds of the only issue with which they were acquainted, viz., the bonds of 1953. It is, however, evident that the plaintiff intended to purchase bonds of the issue of 1932. There was no mutual mistake, so that the contract could be reformed to meet the actual intention of the parties. The only question, therefore, in the case, is whether or not the plaintiff actually knew that the defendants did not intend to sell bonds of the issue of 1932, but intended to sell bonds of 1953, and by accepting the defendants' mistaken offer to sell was guilty of such unconscionable conduct as will permit the defendants to repudiate their contract of sale.

As in most cases where the question to be considered is the intent or understanding of the parties, the evidence of what the plaintiff knew or understood is largely circumstantial. It is shown that he dealt in bonds of both issues. It is fairly inferable that he knew that the bonds of the two issues were selling at a difference of about 20 points, and that he knew that the price which he was agreeing to pay was a much lower price than could be obtained readily for bonds of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the issue which he was buying, and not much higher than the prevailing price of the other issue. Nevertheless, since the parties were dealing at arm's length, he was not bound to put his knowledge of prices at the disposal of the defendants, nor was he bound to warn them that they were making a bad bargain. I think, however, that the evidence is also susceptible of an inference that the plaintiff knew that, in offering to sell these bonds at the price which they did, the defendants were ignorant of the fact that the bonds of the issue of 1932 had different characteristics from the issue of 1953. Even this inference will not, however, support the defense of the defendants; but the evidence must fairly be susceptible of the inference that he also knew that they were in fact intending to sell the issue of 1953, and not that of 1932. See Anson on the Law of Contract, c. 4, § 1. If this inference can fairly be drawn from the evidence, then the defendants' mistake would be a ground for the rescission of the contract, or for refusing to enforce its specific provisions, even though it could not be a ground for altering its terms. Curtis v. Albee, 167 N. Y. 360, 364, 60 N. E. 660; Drachler v. Foote, 88 App. Div. 270, 84 N. Y. Supp. 977.

Keeping these distinctions in mind, I find from a careful examination of the record that the defendants were entitled to have this question submitted to the jury under proper instructions. The plaintiff was a dealer in these securities, and on occasion had advertised for these securities in the Financial Chronicle. He was aware of the disparity in price and value. He opened the negotiations with the defendants by offering to sell them bonds of the issue of 1932. When they offered the price of 71, which was about the price of the issue of 1953, he wrote them, saying that his client had an idea that they were worth over 90, but failed to point out that their offer was in all probability based upon the value of a different issue. On the next day, in answer to this letter, he received a letter reading in part:

"Replying to your favor of the 16th inst. in re Pennsylvania Coal & Coke 5's, beg to state that we are able to offer a block of $9,000 of these bonds at 77½ and interest."

He then telegraphed for an option for "nine Penna Coal Coke first fives nineteen thirty-two," and when he received the option he accepted it by another telegram, reading in part:

"I accept nine thousand dollars Penna. Coal Coke first fives nineteen thirty-two."

It is extremely significant that in the entire correspondence the defendants always describe the bonds by the indefinite term of "Pennsylvania Coal & Coke. 5's," while the plaintiff always described them specifically as "first fives nineteen thirty-two." Under these circumstances, the jury might well find that the defendants were acquainted only with the issue of 1953, and intended only to sell this issue, and that the plaintiff knew that they were apparently agreeing to sell the bonds of the earlier issue only by reason of their failure to notice or give significance to his description.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

PAGE, J., concurs. SEABURY, J., dissents.